# COURT OF ERRORS AND APPEALS

OF THE

## STATE OF NEW JERSEY,

## ON APPEAL FROM THE COURT. OF CHANCERY,

### JUNE TERM, 1894.

THE FIRST BAPTIST CHURCH OF HOBOKEN, appellant,

v.

PARKER SYMS, executor of the will of Samuel R. Syms et al.,
respondent.

1. Where, in an action at law against one sued in a representative capacity, the defendant colludes with the plaintiff to suppress material evidence, a judgment thus obtained in the action will be vacated.

2. Collusion to conceal material evidence will suffice to move a court of equity to give relief against a judgment when the evidence suppressed, if offered, might have produced a different result.

3. *Herbert* v. *Herbert, 4 Dick. Ch. Rep. 566*, explained.

On appeal from a decree of the chancellor, whose opinion is reported in *First Baptist Church of Hoboken* v. *Syms, 6 Dick. Ch. Rep. 363*.

35 [545]

First Baptist Church v. Syms.

*Mr. Gilbert Collins*, for the appellant.

*Mr. John H. Garrick*, for R. H. Syms.

*Mr. William Brinkerhoff*, for Parker Syms.

The opinion of the court was delivered by

BEASLEY, C. J.

The facts of this case are so fully stated in the opinion read by the chancellor, that it is not necessary to rehearse them.

The only question that this court has been called upon to consider is, whether a certain judgment obtained by Robert Syms against his brother, Parker Syms, as the executor of his father, should be permitted to stand or should be set aside. These litigants were brothers, and the chancellor finds that the judgment in question was obtained by collusion between them. In the opinion of this court no other reasonable conclusion can be reached from the proofs before us. We fully agree with the statements and strictures of the chancellor with respect to the conduct of the trial of the case. He says: "No witnesses were produced in behalf of the defendant [that is, the executor]. The defendant appeared by counsel before the referee, and that counsel cross-examined the plaintiff's witnesses in such a manner that it is impossible to read the cross-examination without an abiding conviction that it was intended to aid the plaintiff's case rather than to defend against it and defeat it."

It is plainly shown that the matter in question could not be fairly tried without the testimony of one Mrs. Serrell, and on this subject the chancellor says: "The plaintiff testified, as an excuse for the non-production of Mrs. Serrell as a witness, that she was then ill and absent from home, and that excuse was suffered to account for her absence, no application being made to continue the case until her attendance could be had. Neither she, nor her sons, nor her daughter-in-law, nor John J. Syms, nor George N. Syms were produced by the executor, although the case abundantly discloses that they were known by him to

be most material witnesses in his behalf. Although the executor was sued in a representative capacity, he made no objection to the plaintiff being sworn in his own behalf and testifying both to conversations and transactions with his decedent. Indeed, it is difficult to see how the case could have been more carefully managed to support the plaintiff's claim " &c.

In view of these circumstances, the chancellor thus expresses his conclusion, viz. : " If it were in the power of this court to afford the complainant relief against the judgment upon the establishment merely of collusion between the parties to it, in pursuance of which important evidences were intentionally withheld from the law court, particularly where that collusion is coupled with the fact that the defendant in the judgment occupies a position of trust and confidence, as executor of his father's will, to each of the legatees thereunder, which demands from him the exercise of a more scrupulous fidelity than such collusion admits of, I could have little hesitation in granting it relief." The chancellor then proceeds to explain the ground on which he feels constrained to refuse to grant the prayer of the complainant, such ground being, in his own language, " that this court's jurisdiction obtains in such a case as this only upon the establishment of fraud, and to establish that the proofs must show not only collusion and the intentional concealment of evidences, but also that the evidences withheld, if they had been presented to the law court, would clearly have been sufficient to defeat the plaintiff's suit. In other words, it must clearly appear that the collusive acts have done injury to the complainant." For the doctrine thus propounded the case of *Herbert* v. *Herbert, 4 Dick. Ch. Rep. 566,* is cited.

With respect to the ascertainment by the chancellor of the facts of the case and his estimation of their effect, this court, in all particulars, concurs ; but we cannot agree to the legal theory that was applied to them. In our opinion it is plain that the complainant has been, and is, greatly wronged and injured by this collusive judgment. Unless it be vacated it stands as *prima facie* evidence of the right of the plaintiff in it to recover the sum awarded, and thus the burden of the proof is shifted so

that the appellant is obliged to prove a negative. But more than this, it has deprived the appellant of an honest trial of his case in the courts of common law and the verdict of a jury. It is the prerogative of every man that his adversary shall be compelled to prove the validity of his claim, and that such proof shall be made before the tribunal appointed for that purpose. These are fundamental rights and of these this appellant has been deprived by the indefensible practices that have been so strongly reprobated in the opinion under criticism. Nor do we think that the case cited will, in any degree, bear the construction put upon it. That was the case of a judgment that had been obtained by virtue of a proceeding in foreign attachment, and it certainly, in nowise, is intimated in it that if such a course of law had originated in, or had been carried on by means of, covinous practices it would not have been abolished by a decree in equity.

The result, therefore, is that this court adjudges · that the decree appealed from be reversed, and in its stead that a decree annulling the judgment in question be entered.*

In order to avoid misconception it is proper to say before leaving this subject, that it is not to be inferred that the view that this court has taken of the merits of this case coincides with that expressed by the chancellor. The burden is upon the defendant Robert to show that the alleged gift of his father's interest in the estate in question was actually and legally made, and it may well be doubted whether he has succeeded in fulfilling either requirement. The evidence is conflicting and obscure, and the gift was by parol, although the subject of it was mainly land, and consequently to what extent it is affected by the statute of frauds, is obviously a matter of vital interest, although in the progress of the investigation it seems to have escaped attention. But as this court has disposed of the case on an issue that does not involve these latter questions, with respect to them no definitive conclusion has been reached.

First Baptist Church · v. Syms.

Magie, J. (dissenting).

If the proofs in this cause establish that Robert H. Syms and Parker Syms fraudulently colluded to suppress evidence material to the issue in the trial of the action brought by the former against the latter as executor of Samuel R. Syms, deceased, the decree proposed by the majority of this court is one proper to be made, and I would vote for it without stopping to consider whether the suppressed evidence, if produced, would either have compelled or justified a different result, for if the evidence so suppressed is relevant and of sufficient importance to tend to produce a different result, in my judgment those who fraudulently and collusively suppressed it, ought not to be permitted to avail themselves of· the judgment, unless they permit persons interested as appellant is to retry the issue.

But as I am unable to discover in the case sufficient proof that Robert and Parker Syms were guilty of the fraud charged, I cannot concur with the majority of my associates, but must vote to affirm the decree below.

A complete review of the evidence is unnecessary. It will be sufficient to briefly indicate wherein I think the evidence falls short of sustaining the charge.

The charge is that Parker Syms, by collusion with Robert, purposely refrained from calling as witnesses their aunt, Mrs. Serrell, and some of her family, who had been present at an interview when the terms upon which Mrs. Serrell agreed to undertake the contest of the will of her brother, William J. Syms, were settled. The action of Robert included his claim to a large sum of money, which arose out of a compromise of that contest, and whether that money belonged to Robert or to his father, Samuel R. Syms, was the question in dispute, and which depended for solution on what agreement had been made by Mrs. Serrell at that interview. Parker Syms was, therefore, aware that Mrs. Serrell and those of her family who had been present were competent witnesses to the occurrences of that interview.

But before he can be convicted of having fraudulently acted in refraining from calling them as witnesses, it must affirma-

tively and clearly appear that he either knew or had good reason to believe that their testimony would have at least tended to defeat Robert's claim in the action.

Parker Syms was present at the same interview, as was his brother Robert. Both of them testify that Mrs. Serrell then agreed that one-third of the amount obtained by the contest she proposed to undertake should be paid to Robert for himself. Unless these persons have sworn corruptly (which I can find no ground for imputing), Parker Syms believed, and had a right to believe, that such was the agreement then made.

There was also present at the interview Mr. Bormeisler, a lawyer, who was employed to act in the contest of the will for Mrs. Serrell, Robert H. and George Syms. He appears to be entirely indifferent between the parties. By his testimony such an agreement was then made, and he produces, in corroboration, a document which he swears was drawn upon instructions given him by the parties who employed him. That such instructions were given is not denied. The fact that Mrs. Serrell afterwards declined to sign the document is of no significance, as her refusal was put on the ground that her word was as good as her bond.

From anything that has been made to appear in this case, I find no reason to suppose that Parker Syms knew, or had reason to believe, that the recollection of his aunt and her family as to the terms of the agreement made at that interview differed in any respect from his recollection and that of his brother Robert and of Mr. Bormeisler. If he knew of such difference of recollection, it has not been proved.

Parker Syms was aware that Mrs. Serrell knew that Samuel R. Syms had resisted the urgent entreaties of his children to unite with her in the contest of the will of their brother William ; that he had refused to do so on the ground that he deemed it dishonorable for an executor and trustee under the will to take any steps to defeat it. Parker's knowledge of his aunt's acquaintance with these facts does not render it probable that he had ground to believe she would testify to an agreement with her brother Samuel, through the agency of Robert, by which he should receive a share of the proceeds of a contest, which he

was declaring himself too honorable to join in, by an underhand and dishonorable expedient.

After the compromise was effected the co-executors of Samuel R. Syms contested his right to commissions upon the estate of William J. Syms, on the ground that he had procured or aided in the attack upon William's will, and had shared in the proceeds resulting from a compromise of that attack. It appears that Parker became aware of the charge of misconduct against his father. This might indicate that he had grounds at least to suspect that Mrs. Serrell had, directly or indirectly, implicated Samuel as a secret party to her contest and a sharer in its results. But any such inference is wholly forbidden, for Parker received from Mrs. Serrell her voluntary affidavit, drawn by an attorney engaged and aided by her son, in which affidavit she asserts, in the strongest manner, that Samuel R. Syms had refused to sanction and to render aid to her action; that her agreement with Robert was that he should have one-third of the proceeds of any compromise made, and that she had paid out such portion, which she calls the "share of the said Robert H. Syms," to his father with his consent. This affidavit Mrs. Serrell admits was made by her for the purpose of enabling Parker to contradict the imputations upon his father, including that which charged him with sharing the proceeds of the compromise she had made. Unless he was informed by her or otherwise knew that it was false, he had a right to believe that her recollection of the agreement she had made was in accord with his own.

In the absence of anything to show that he did not hold this belief, which, from the circumstances, he was justified in holding, I find it impossible to infer that his failure to call Mrs. Serrell and others present at the interview, as witnesses, was fraudulent. His conduct was not inconsistent with an honest belief that Robert's claim was just and would be supported by those witnesses if he had called them.

This, in my judgment, disposes of the case made by the bill, and it is unnecessary to consider whether appellant might not be otherwise entitled to relief.

*For reversal*—THE CHIEF-JUSTICE, ABBETT, DEPUE, GAR-
RISON, LIPPINCOTT, SIMS, SMITH—7.

*For affirmance*—DIXON, MAGIE, REED, BOGERT, BROWN—5.